### In the Matter of A.W.

### No. 04–03–00688–CV.

Court of Appeals of Texas, San Antonio.

Sept. 8, 2004.

Michael D. Robbins, San Antonio, for appellant.

Susan D. Reed, Criminal Dist. Atty., San Antonio, for appellee.

Sitting: PAUL W. GREEN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from a juvenile adjudication and order of disposition. A jury

found that appellant engaged in juvenile conduct, *i.e.*, aggravated sexual assault of his eight-year-old step-sister, K.M. The jury assessed a punishment of commitment to the Texas Youth Commission ("TYC") with possible transfer to the Institutional Division of the Texas Department of Criminal Justice for ten years. We affirm.

## EXTRANEOUS OFFENSE

■ In his first issue, appellant asserts the trial court erred in denying his motion for mistrial, because the evidence concerning "abuse of some children" had no relevance apart from character conformity.

During the State's case-in-chief, Sherrie Hardy, a Child Protective Services intake worker, testified about a referral made against appellant, explaining it "is regarding some children." Defense counsel objected that Hardy's testimony should be limited to only the alleged abuse of the complainant and not of other children. The jury was excused and defense counsel asked for a mistrial. The trial court denied the request, stating, "I believe there is a way to correct that. . . . I could give an instruction to the jury to disregard that statement." Defense counsel responded, "That almost makes it worse for me. I appreciate the Court's offer, this is a witness we have been trying to reach and subpoena for months and would not cooperate, and bring us records." Counsel then questioned Hardy on voir dire, after which he renewed his request for a mistrial. The court denied the request and admonished Hardy to limit her testimony to only the complainant. Defense counsel did not ask for an instruction to disregard and expressly declined the trial court's offer to instruct the jury. Therefore, the error, if any, was waived. *See Hunnicutt v. State*, 500 S.W.2d 806, 808 (Tex.Crim.App.1973); *Hunter v. State*, 481 S.W.2d 806, 807 (Tex. Crim.App.1972).

## COMPETENCY OF CHILD WITNESS

■ In his second issue, appellant asserts the trial court erred in admitting the testimony of V.M. because she was a child witness not competent to testify. V.M., who is another one of appellant's step-sisters, testified about appellant's alleged sexual touching of her.

On appeal, appellant contends V.M. was not able to intelligently observe or recollect the events and, given the inconsistencies in her testimony, did not have the capacity to narrate the events. However, at trial, appellant's only complaint was that V.M. was not a competent witness because she could not remember what happened. Therefore, our discussion on appeal is limited to this objection.

■ Children are competent to testify unless the trial court determines, after a hearing, the child does not possess sufficient intellect to relate the transactions about which she is being questioned. Tex.R. Evid. 601(a)(2); *Coachman v. State*, 692 S.W.2d 940, 945 (Tex.App.-Houston [1st Dist.] 1985, pet. ref'd). When we review the trial court's determination, we examine not just the witness's responses at the qualification hearing, but the entire testimony. *Fields v. State*, 500 S.W.2d 500, 503 (Tex.Crim.App.1973); *Beavers v. State*, 634 S.W.2d 893, 895 (Tex.App.-Houston [1st Dist.] 1982, pet. ref'd).

■ At the time of trial, V.M. was eight years old and in the second grade. The alleged touching occurred two years earlier. She identified appellant by pointing to him and describing the color of his clothing. Although V.M. responded "No" when asked if anyone ever did anything to her, she said appellant touched both her "front private" and her "butt" more than once with his "private" and put his "private" in her "private." She testified that appellant

said, "If you tell the parents I swear to God I will beat you up." She said this happened during the night, "a long time ago." V.M. did not remember whether appellant was clothed when the incidents occurred. She remembered she was six or seven years old at the time. On cross-examination, V.M. responded "No" when asked if anyone ever touched her "privates." On recross-examination, V.M. said she did not remember everything appellant did to her, but she only "kind of remember[ed]."

 Confusing and inconsistent responses from a child are not reasons to determine she is incompetent to testify; rather, they speak to the credibility of her testimony. *Berotte v. State*, 992 S.W.2d 13, 17 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); *Upton v. State*, 894 S.W.2d 426, 429 (Tex.App.-Amarillo 1995, pet. ref'd); *see also Macias v. State*, 776 S.W.2d 255, 257 (Tex.App.-San Antonio 1989, pet. ref'd). The role of the trial court is to make the initial determination of competency, not to assess the credibility or weight to be given the testimony. Absent an abuse of discretion, we uphold the trial court's determination. *Garcia v. State*, 573 S.W.2d 12, 14 (Tex.Crim.App.1978). We give great deference to the trial court who was there to personally evaluate the child and her responses; accordingly, we are not persuaded the trial court abused its discretion in permitting V.M. to testify.

## MOTION FOR MISTRIAL DURING DISPOSITION PHASE

 In his third issue, appellant asserts the trial court erred in denying his motion for a mistrial following the State's question about whether sexual abuse had occurred in the home of appellant's grandfather.

During the disposition phase, appellant's grandfather, Warran Rudy, testified about the type of home he could provide for appellant. The State asked Rudy, "Are you aware if your daughter, Dawn, was sexually abused as a child?" Defense counsel asked to approach the bench, and the State argued the testimony was relevant to Rudy's ability to supervise children. After the trial court stated it would allow the parties to question Rudy outside the jury's presence, defense counsel asked for a mistrial. Outside the jury's presence, Rudy stated he was unaware of any abuse of his daughter, who is appellant's mother, and he explained that she did not live with him when she was a child. Defense counsel again moved for a mistrial. The trial court denied the motion for mistrial, but stated it would instruct the jury to disregard the question. The court also ordered the State to follow-up with another question so that defense counsel would not be forced to redirect any questions on the subject. When the jury returned, the trial court instructed it to disregard the last question. The State asked Rudy if "any sexual abuse ever occurred in [his] home?" Rudy answered, "No." The State then asked, "And that is of anybody?" Rudy responded, "And that is of anybody." The State then switched topics, asking Rudy about appellant's experience at school.

 A trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard. *Wood v. State*, 18 S.W.3d 642, 648 (Tex.Crim.App.2000). A mistrial is appropriate for only "highly prejudicial and incurable errors." *Id.* It may be used to end trial proceedings when the trial court is faced with error so prejudicial that "expenditure of further time and expense would be wasteful and futile." *Id.* The asking of an improper question will seldom call for a mistrial because, generally, an instruction to disregard cures any error. *Id.; Ransom v. State*, 789 S.W.2d 572, 585 (Tex.Crim.App.1989). A

trial court is required to grant a motion for a mistrial only when the improper question is "clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Wood*, 18 S.W.3d at 648. After reviewing the record, we conclude the trial court's prompt instruction to the jury cured any error from the objectionable question and the trial court did not abuse its discretion in denying appellant's motion for mistrial.

## COMMITMENT TO THE TEXAS YOUTH COMMISSION

▆▆ In his fourth issue, appellant asserts the trial court erred in denying his motion for a new trial because the evidence was factually insufficient to justify commitment to the TYC.

As a threshold issue, the parties disagree on the appropriate standard of review to be applied to appellant's complaint. The State argues we must apply an abuse of discretion standard under this court's holding in *In re K.T.*, 107 S.W.3d 65 (Tex. App.-San Antonio 2003, no pet.). In that case, this court held that the "criminal abuse of discretion standard—divorced from evidentiary standards of legal and factual sufficiency—applies to a trial court's juvenile disposition order under section 54.04(d)(2)." *Id.* at 74–75. Appellant notes that *In re K.T.* involved an indeterminate sentence assessed by the court, while his case involves a determinate sentence assessed by a jury. Based

on this distinction, appellant asserts the appropriate standard of review is the criminal standard for sufficiency of the evidence.

We need not reach the issue of which standard should be employed when reviewing a jury's findings that a child is in need of rehabilitation or that the protection of the public or the child requires that disposition be made pursuant to Family Code section 54.04(c) because those are not the findings about which appellant complains on appeal. Instead, appellant's specific complaint is that the evidence is factually insufficient to support a finding that it is in his best interest to be placed outside his home and that he, in his home, cannot be provided with the quality of care and level of support and supervision he needs to meet the conditions of his probation. These are findings entrusted to the trial court pursuant to Family Code section 54.04(i).[1] Therefore, we follow this court's holding in *In re K.T.*

On appeal, appellant asserts it was in his best interest to be placed with his grandfather. During the disposition hearing, Rudy testified that he is a fifty-four-year-old retired Post Office employee who lives in St. Louis, Missouri. Appellant has lived with Rudy for the past year, since the sexual assault allegations surfaced. With the exception of his father and possibly his paternal grandfather, most of appellant's extended family lives in St. Louis. During the time appellant lived with him, Rudy

---

1. The Juvenile Justice Code provides that certain findings may be made by either the court or the jury. *See e.g.*, Tex. Fam.Code Ann. § 54.04 (Vernon Supp.2004). However, if the court places a child on probation outside the home or commits the child to the TYC, it is the court's responsibility to determine that placement outside the child's home is in the child's best interest and the child cannot receive the appropriate level of care, support, and supervision in his or her home. *Id.*

§ 54.04(i). Here, the trial court made the section 54.04(i) determinations, while the jury made only two findings: (1) that appellant "is in need of rehabilitation or that the protection of the public or of [appellant] requires that a disposition be made," and (2) that appellant be sentenced "to commitment to the Texas Youth Commission with possible transfer to the Institutional Division of the Texas Department of Criminal Justice for 10 years (any term of years not to exceed 40 years)."

said appellant's teachers indicated he was doing well in school although his grades have recently declined, there were no disciplinary problems at school, and no one said appellant was making them uncomfortable. Rudy said that because he is retired, he can devote 100% of his time to appellant. He said he would ensure that appellant received specialized sex offender counseling. Rudy has several young grandchildren, but he would ensure appellant was supervised if other children came over to his house. On cross-examination, appellant's report card was admitted into evidence, showing grades ranging from D- to an A. Although appellant skipped classes, Rudy said he was never informed of such behavior by the school.

The jury also heard evidence of two extraneous offenses involving appellant and his sister and another step-sister while all three lived together with appellant's father, step-mother, and complainant. Appellant had shown pornographic videos to his sister, J.W., asked her if she wanted to "do it" "doggie style" like the people in the video, laid himself on top of her when she retreated to her bedroom, and made her touch him. When J.W. told her step-mother about the incident, appellant was sent to live with his mother. J.W.'s mother did not take her seriously when J.W. told her about appellant's behavior. Prior to living with her father, J.W. had lived with her mother, who is currently a flight attendant and lives in St. Louis. While living with her mother, J.W. would hear her mother and boyfriend "making noises" in the living room. Appellant's step-sister, V.M., said appellant touched both her "front private" and her "butt" more than once with his "private" and put his "private" in her "private." She testified that appellant said,

"If you tell the parents I swear to God I will beat you up."

Appellant's step-mother testified that she at first wanted appellant to be committed to the TYC because of what he did to his sister and step-sisters. However, after seeing him at trial, she decided she wanted appellant to get therapy and be placed on probation. She said appellant would not be allowed back into her house, and she thought he should be placed in a treatment facility. She did not think it was safe for appellant to be "out on the streets," and if it ever became safe, she would not allow him around the girls. Appellant's father, Dion Wright, agreed that appellant would never again be allowed to see the three girls.[2] He hoped that appellant would receive long-term therapy in a residential placement facility, and he thought appellant should go the TYC only as a last resort. Wright did not think it would be helpful if appellant lived with his mother. As for whether appellant should live with his grandfather, Wright said that no one returned his calls when he called Rudy's house to inquire about appellant, and in the year that appellant had lived with Rudy, nothing was done to help appellant. Wright said that to his knowledge the State of Missouri could not guarantee the resources for any follow-up care for appellant.

Appellant's probation officer, Cory Schlepp, also testified. He said that certain of the TYC facilities have sex offender units. Although an individual who is committed to the TYC would receive counseling, there is no guarantee that such counseling would be from a licensed sex offender therapist. However, a child committed to the TYC under a determinate sentence as a sex offender would get priority placement into a sex offender pro-

2. Appellant's father, who lives in San Antonio, called the police and Child Protective Services when the complainant made her outcry statement against appellant.

gram. Schlepp said that if a minor is committed to TYC, he may remain there past his sixteenth birthday if the child cooperates with the TYC program. If the child does not cooperate, the child may be transferred to the Texas Department of Corrections. While at the TYC, a child continues his education and learns job skills.

Schlepp said appellant's grandfather told him appellant had received counseling while in St. Louis, although he did not know what type of counseling or the length of time appellant underwent counseling. He said, based on his experience, that sex offenders typically are well-behaved and good students. Schlepp investigated treatment facilities in St. Louis, and discovered that it does not have an intensive supervision probation program, and he could not guarantee appellant would receive any counseling because such counseling would be at the discretion of the State of Missouri. After considering all possible placements in Missouri and Texas, Schlepp's opinion was that appellant should be committed to the TYC based on his concern over the level of supervision needed, the aggravated nature of the offense, and that there was more than one victim, there was a threat of violence, and the offense occurred more than once.

Based on this evidence, we hold that the trial court was authorized to find that it "is in [appellant's] best interest to be placed outside of his home and that reasonable efforts have been made to prevent or eliminate the need for [his] removal from the home and to make it possible to return [him] to [his] home; and further . . . that [he] in [his] home, cannot be provided the quality of care and level of support and supervision that [he] needs to meet [the] conditions of his probation." Accordingly, appellant has not demonstrated that the trial court abused its discretion in committing him to the TYC, rather than placing him with his grandfather.