Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-09-00414-CR

Jose **LEAL**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 08-07-00086-CRK
Honorable Stella Saxon, Judge Presiding

Opinion by:  Phylis J. Speedlin, Justice

Sitting:  Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:  March 9, 2011

AFFIRMED

Jose Leal, Jr. appeals from his convictions for aggravated sexual assault of a child and

indecency with a child by contact.  We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an incident that occurred when Leal spent the night of August 7,

2006 at the home of his daughter, Amelia Cisneros, before a trip to Odessa.  Amelia's daughter,

ten-year-old Jennifer, had been eating pizza, watching television, and play-wrestling with Leal in

an extra bedroom with a TV and two mattresses on the floor. Jennifer's name for Leal was "Grandpa Joe" or "Pa Joe." Earlier that evening, Leal had asked Jennifer if she wanted to sleep in the room with him that night and she had agreed. It was late when Amelia told Jennifer she was going to take a shower and that it was time for her to go to sleep; Amelia turned off the lights and shut the door to the bedroom. After the lights were turned out, Jennifer was kissing on Leal and expecting him to tickle her as he usually did. Leal, however, pulled Jennifer toward him and began kissing her "in a different way" with his mouth open and putting his tongue in her mouth. Leal put his hands on her breast under her shirt, lifted it, and started kissing Jennifer's breast. Next, Leal penetrated Jennifer's vagina with one or two fingers, which she said hurt. During the assault, Leal told Jennifer not to tell anyone because the police would come take him away, and she agreed that she did not want that to happen. Afterward, Jennifer went into her own bedroom and stayed up all night watching television. When Amelia got out of the shower, she came into Jennifer's room looking for a hairbrush. Amelia asked why Jennifer was not asleep in the other room with Grandpa Joe, and Jennifer replied that he snored too much. Jennifer watched Amelia make sandwiches for the trip, but did not tell her mother about what had just happened with Leal because she was shocked and did not know what to say.

In the morning, Amelia and Leal drove to Odessa to pick up Jennifer's sister, Jalessa. Jennifer stayed behind at the home of a different set of grandparents where her Aunt Veronica also lived. Later that day, Jennifer told her Aunt Veronica about the sexual assault by Grandpa Joe (Leal) and said it happened while her mother was in the shower. Jennifer told Veronica, "remember what Alejandro did with Jalessa . . . when he touched her privates? My Pa Joe did

that to me."[1]  Veronica asked her to explain what she meant, and Jennifer said that Pa Joe touched her "all right here" on her breast, "stuck his hand in her pants and inside too."  Jennifer was crying, scared and nervous at the time.  Veronica then called Amelia and her husband David Cisneros, along with Jennifer's biological father and his wife; they all came over to Veronica's house and began questioning Jennifer about the details of her allegation.  During the family meeting, Veronica stated to Jennifer, "I have to ask you a horrible question, . . . did he stick his fingers inside?"  Jennifer replied, "Yes."  Her grandmother asked whether it hurt, and Jennifer said it did.  After the family meeting, the police were called and an investigation ensued, resulting in Leal's indictment.

At trial, Jennifer, who was 12 years old at the time, testified about the sexual assault incident as described above.  Veronica testified as the outcry witness, and Amelia and David Cisneros testified about the events of that day.  The S.A.N.E. nurse who examined Jennifer at the hospital testified that Jennifer told her that Grandpa Joe kissed her on her breasts and "went under my clothes and panties inside like kind of with his finger, two or three of them . . . he did go inside my private."  The results of Jennifer's medical exam were normal, which the nurse testified is consistent with digital penetration; a sample of dried bodily fluid was taken from Jennifer's breast.  Sergeant Steven Monsavias, who conducted the investigation, testified that the fluid sample was not sent to the lab for DNA testing because Jennifer stated she had bathed before the examination.  Monsavias also testified that Leal made a voluntary statement in which he stated he was playing "cuchi-cuchi" with Jennifer and she was kissing him on his mouth, and she put his hand on her vagina and he left it there for about 30 seconds before realizing it was

---

[1] At the time she made her outcry against Leal, Jennifer knew that her younger half-sister, Jalessa, had been sexually assaulted by a different grandfather, Alejandro, who "put one or two fingers inside her vagina" and was in jail for that conduct.

wrong. Leal's defense theory at trial was that Jennifer was jealous of the attention her sister Jalessa received, and made up the allegations to garner more attention. The jury convicted Leal of one count of aggravated sexual assault and one count of indecency with a child by contact. Leal was sentenced to ten years' imprisonment on each count, concurrently. Leal now appeals.

**ANALYSIS**

On appeal, Leal contends the trial court abused its discretion by failing to confirm that Jennifer understood her obligation to tell the truth in court, by admitting the outcry witness's testimony because she had coached the child, and by restricting the scope of cross-examination. Leal further asserts the evidence is insufficient to support his convictions, and that his conviction for two offenses arising out of the same sexual assault incident violates double jeopardy.

> ***In-Court Testimony by Child Complainant***.

In his first issue, Leal complains that the State did not establish Jennifer's ability to understand the obligation of an oath to testify truthfully, and implies the trial court abused its discretion by permitting Jennifer to testify. Citing inconsistencies between Jennifer's "versions of events and everyone else's memories of what [Jennifer] had originally said," Leal contends Jennifer did not understand her responsibility to tell the truth at trial.

A child is competent to testify as a witness unless it appears to the court that the child does not "possess sufficient intellect to relate transactions with respect to which they are interrogated." TEX. R. EVID. 601(a)(2). Competence involves a witness's capacity to narrate, which encompasses "both an ability to understand the questions asked and to frame intelligent answers and . . . a moral responsibility to tell the truth." *Torres v. State*, 33 S.W.3d 252, 255 (Tex. Crim. App. 2000) (quoting *Watson v. State*, 596 S.W.2d 867, 870 (Tex. Crim. App. 1980)). It is Jennifer's understanding of her duty to tell the truth that Leal challenges on appeal. The

issue is waived because it is raised for the first time on appeal; no objection challenging Jennifer's competency was raised at trial. TEX. R. APP. P. 33.1(a); *De Los Santos v. State*, 219 S.W.3d 71, 80 (Tex. App.—San Antonio 2006, no pet.).

Even if the issue had been preserved, the trial court did not abuse its discretion in permitting Jennifer, 12 years old at the time of trial, to testify. *See Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995) (trial court's determination that a child is competent to testify is reviewed for an abuse of discretion). The record reflects that Jennifer was placed under oath, and affirmed her understanding of the oath, prior to her substantive testimony. *See* TEX. R. EVID. 603 (requiring every witness, before testifying, to declare by oath or affirmation that the witness will testify truthfully). In the initial questioning by the prosecutor, Jennifer confirmed her understanding of her duty to tell the truth by stating that she knew the difference between the truth and a lie, giving a concrete example, and explaining that she had promised to tell nothing but the truth in court. Jennifer's responses, as well as her subsequent testimony, indicated that she had the ability to intelligently recall and narrate the events, understood the difference between the truth and a lie, and understood that she had a responsibility to testify truthfully; therefore, her competence to testify was established. TEX. R. EVID. 601(a)(2); *see Torres*, 33 S.W.3d at 255; *see also In re A.W.*, 147 S.W.3d 632, 634 (Tex. App.—San Antonio 2004, no pet.) (child's competence is evaluated based on their responses to qualification questions as well as child's entire testimony). There is no indication in the record, and Leal directs us to nothing in his brief, to support a finding that Jennifer was not competent to testify or did not understand her "moral obligation to tell the truth." *See Watson*, 596 S.W.2d at 870; *see also Dufrene v. State*, 853 S.W.2d 86, 88-89 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (child is not required to understand the "obligation of the oath," but merely the duty to tell the truth).

Moreover, the existence of inconsistencies in a child victim's version of events does not render the child incompetent to testify, but goes to the credibility of their testimony—an issue to be resolved by the jury. *De Los Santos*, 219 S.W.3d at 81. Leal's first issue is overruled.

### *Outcry Witness Testimony.*

In his second issue, Leal asserts the testimony of the outcry witness, Veronica Sauceda, recounting the child's hearsay statements about the abuse was inadmissible because she suggested words or coached the child into making specific statements. First, we note that Veronica's qualification as the proper outcry witness was stipulated by defense counsel, and the record supports her status as the proper outcry witness. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2 (West Supp. 2010). Second, the record does not support Leal's assertion that Veronica suggested the specific words to Jennifer, or coached Jennifer to make the accusations of sexual assault. To the contrary, Veronica testified that, when Jennifer made the initial outcry, Veronica pretended not to know what had happened to Jalessa in order to encourage Jennifer to be more specific and state it in her own words. Veronica repeatedly testified that she did not want to "say it for her," and kept urging Jennifer to explain exactly what happened, saying "tell me again," "I don't understand." Veronica stated she kept asking Jennifer, "do you know what you're saying?" and confirming that she understood the significance and was telling the truth. Veronica explained that at the family meeting she felt it was important for Amelia and the other family members to hear Jennifer state what happened, but Jennifer was afraid. Veronica explained that was the reason she asked Jennifer the specific question whether Leal "had stuck his finger inside?" On cross-examination, Jennifer was asked, with reference to that question, whether Veronica "suggested that to you," and Jennifer said, "yes." On direct, Jennifer testified that she told her Aunt Veronica that "Pa Joe stuck his fingers inside her" when she first made her

initial outcry statement to her, before the family meeting. Veronica similarly testified that Jennifer told her that Leal put his fingers "inside" during her initial outcry, before the family meeting. Finally, to the extent the record shows any suggestive statements or coaching, it goes to the weight to be given Jennifer's outcry, not to the admissibility of the outcry witness's testimony. The trial court did not abuse its discretion in permitting Veronica Sauceda to testify as the outcry witness. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (admission of evidence is reviewed for abuse of discretion). We overrule Leal's second issue.[2]

### *Cross-Examination*.

Leal next contends the trial court improperly restricted the scope of his cross-examination in violation of his constitutional rights to due process and confrontation. *See* U.S. CONST. amends. VI, XIV; TEX. CONST. art. I, § 10; *see also Davis v. Alaska*, 415 U.S. 308, 316 (1974). Leal was in the process of attempting to impeach Jennifer with prior statements concerning whether the sexual assault occurred before, during, or after her mother's shower when the court sustained an "asked and answered" objection by the State. The court's ruling occurred in the context of the following cross-examination of Jennifer:

> Q. Okay. Well, do you remember when they [sic] said, it happened before you got in the shower, mama? And your mama said, that's impossible, it couldn't have happened then. And do you remember changing your story to say, well, then it happened after the shower? Do you remember making that statement?
>
> A. I remember when she said, no, that that's before the shower.
>
> Q. That it couldn't have happened before the shower because she was with you and Grandpa Joe the whole time, do you remember?
>
> A. Yes, I remember.

---

[2] Leal also complains generally that Veronica was permitted to testify to other hearsay statements made by Jennifer and other relatives at the family meeting that were not part of the initial outcry. However, Leal cites no specific testimony or any objection to such testimony; therefore, any error has been waived. TEX. R. APP. P. 33.1(a); 38.1(i) (citation of authority in support of each argument is required).

Q. And then you changed your story and said, well, then it happened after the shower. Do you remember making that statement?

A. No.

Q. Okay. Well, do you remember her telling you it couldn't have happened after the shower because I was with you the whole time?

State: Objection, Your Honor, asked and answered.

Court: Sustained. Move on, Counsel.

Leal concedes that the subject of Jennifer's prior statements about whether the sexual assault occurred before, during, or after Amelia's shower was addressed in Amelia's and David Cisneros's testimony, as well as Veronica's testimony; however, he argues it was "imperative that the defense be allowed to question the actual complainant on the issue." Defense counsel did question Jennifer at length about whether she changed her story about precisely when the assault occurred, and what her mother told her about it being impossible for it to have happened before or after her shower because she [her mother] was with her the whole time. In fact, after the "asked and answered" objection was sustained, defense counsel was permitted, over the State's objection, to ask the related question, "Do you remember making that statement, well, then it must have happened while you were in the shower?" The record shows that the scope of Leal's cross-examination of Jennifer on the timing of the sexual assault was not unreasonably restricted by the court. *See Carroll v. State*, 916 S.W.2d 494, 498 (Tex. Crim. App. 1996) (trial court has wide latitude to impose reasonable limits on cross-examination such as when a subject is exhausted, or to prevent harassment, repetitive or marginally relevant interrogation). The jury had the benefit of the impeachment questions asked of Jennifer about the timeline and was presented with the defense theory that Jennifer made up conflicting stories in order to gain attention like her sister. *See Tan Kien Tu v. State*, 61 S.W.3d 38, 54 (Tex. App.—Houston [14th

Dist.] 2001, pet. ref'd) (Confrontation Clause is satisfied when defense is given full and fair opportunity to probe and examine witness's forgetfulness, confusion, or evasion through cross-examination, and jury's attention is called to the reasons for discounting or giving less weight to witness's testimony). The trial court's ruling sustaining the State's objection did not constitute an abuse of discretion; therefore, Leal's third issue is overruled. *See Love v. State*, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993) (court's decision to limit cross-examination is not reversible absent a clear abuse of discretion).

### *Sufficiency of the Evidence*.

In his fourth issue, Leal asserts the evidence is both legally and factually insufficient to support his convictions. In determining legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As a reviewing court, we "defer to the jury's credibility and weight determinations because the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). As to factual sufficiency, the Court of Criminal Appeals recently held in *Brooks* that there is no meaningful distinction between legal and factual sufficiency standards, and that the *Jackson v. Virginia* legal-sufficiency standard is the only standard we should apply in determining whether the evidence is sufficient to support a finding of each element of a criminal offense beyond a reasonable doubt. *Id.* at 895, 902 (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)).

As an initial matter, we note that Leal's legal sufficiency issue is inadequately briefed. As his argument in support of his sufficiency issue, Leal merely sets out the standard of review

and refers the court back to his 27-page summary of the trial evidence in the statement of the facts section of his brief. Leal does not specify which element(s) of the two offenses of conviction are not supported by sufficient evidence, does not cite to any particular part of the record, and does not cite any legal authority other than with reference to the standard of review. *See* TEX. R. APP. P. 38.1(i). The only argument Leal makes is the broad assertion that the evidence "belies any credibility in the facts as initially portrayed by the complainant or as testified to at trial. There was no credibility behind any of her statements and the Appellant provided no evidence except as to an accidental touching, where there was not intent to gratify or sexually arouse."

Even if the issue were adequately briefed, viewing the evidence in the light most favorable to the jury's verdict, there is more than a scintilla of evidence to support a rational finding on each element of the two offenses. Viewing Jennifer's testimony about the incident with Leal as the jury could, it established that he touched her breast "all over" under her clothes and kissed her with an open mouth and tongue, which he had not done before, and then stuck his hand inside her pants and his finger(s) inside her vagina, thereby proving the elements of both offenses as charged in the indictment. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2010) (offense of aggravated sexual assault of a child is committed by intentionally or knowingly causing the penetration of the female sexual organ of a child younger than 14 years of age, and not the person's spouse, by any means); TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1) (West Supp. 2010) (offense of indecency with a child is committed by engaging in sexual contact, in this case touching of the breast, with a child younger than 17 years old and not the person's spouse, with the intent to arouse or gratify the sexual desire of the person). The outcry testimony by Veronica corroborated Jennifer's testimony, and the medical

evidence was consistent with Jennifer's allegation. To the extent there were inconsistencies in Jennifer's testimony and between her testimony and that of the other witnesses, such conflicts are matters to be resolved by the jury in determining the credibility and weight to be accorded each witness's testimony. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). We conclude the evidence is sufficient to support Leal's convictions.

### *Double Jeopardy*.

Finally, Leal argues his conviction and punishment for both aggravated sexual assault and indecency with a child violates the Double Jeopardy Clause because both offenses arose out of the same sexual assault transaction. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 14; *see also Brown v. Ohio*, 432 U.S. 161, 165 (1977) (Double Jeopardy Clause protects against multiple punishments for the same offense). Leal relies on several cases holding that a defendant may not be convicted of both indecency by contact and aggravated sexual assault based on a single act of criminal conduct where the indecent contact occurred as part of the sexual assault and not as a separate act. *See Hutchins v. State*, 992 S.W.2d 629, 632 (Tex. App.—Austin 1999, pet. ref'd) (conviction for indecency with a child by contact was set aside on double jeopardy grounds where the only contact proven was the contact incident to a single act of penetration which formed the basis for the aggravated sexual assault conviction); *Patterson v. State*, 96 S.W.3d 427, 432 (Tex. App.—Austin 2002), *aff'd*, 152 S.W.3d 88 (Tex. Crim. App. 2004), *but overruled on other grounds by Sledge v. State*, 262 S.W.3d 492 (Tex. App.—Austin 2008, pet. ref'd) (defendant was convicted of aggravated sexual assault of a child by penetration, indecency with a child by contact, and indecency with a child by exposure based on evidence showing the only contact or exposure that occurred was incident to the penetration; therefore, the indecency convictions were barred by double jeopardy); *see also Barnes v. State*, 165 S.W.3d 75, 88-89

(Tex. App.—Austin 2005, no pet.) (defendant's aggravated sexual assault conviction by genital-to-genital contact was based on the same single act of genital penetration that formed basis for aggravated sexual assault by penetration conviction, and was thus barred by double jeopardy).

The State agrees with the principle expressed in those cases, but asserts that Leal's case is distinguishable because he committed a separate act of indecency by contact independent of the contact inherent in the aggravated sexual assault by penetration; therefore, Leal may properly be convicted and punished for both offenses. We agree. As recognized in *Barnes*, "[a] person who commits more than one discrete sexual assault against the same complainant may be convicted and punished for **each separate act**, even if the acts were committed in close temporal proximity." *Barnes*, 165 S.W.3d at 87 (citing *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999)) (emphasis added). However, as noted by the Court of Criminal Appeals in *Patterson*, a conviction for sexual assault bars a separate conviction for "conduct that is demonstrably part of the commission of that offense." *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (noting that "penile contact with mouth, genitals, or anus in the course of penile penetration" is subsumed in a conviction for the penetration). Here, the evidence showed that Leal committed a separate act of indecent contact with a child, i.e., touching of the child's breast, which occurred independently of, and not incident to, the act of digital penetration of the child's vagina which formed the basis for the aggravated sexual assault offense. Contact with the child's breast was not part of, or required for, the act of penetration of the child's vagina. Therefore, contrary to the cases relied on by Leal in which the only contact proved was incident to the penetration, the evidence here showed that Leal committed two separate and independent criminal acts and thus may be convicted and punished for both offenses. Leal's double jeopardy issue is overruled.

Based on the foregoing reasons, we affirm the trial court's judgment.

Phylis J. Speedlin, Justice

DO NOT PUBLISH