In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00276-CR
_____

**NABAWANGA KAKEMBO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Jefferson County, Texas**
**Trial Cause No. 289894**

**MEMORANDUM OPINION**

A jury convicted Nabawanga Kakembo of Class A misdemeanor assault arising from an altercation she had with her teenage grandson. After sentencing Kakembo to ninety days in jail and assessing a $100 fine, the trial court suspended the imposition of the sentence and placed her on probation. On appeal, Kakembo argues that the evidence is legally insufficient, that there is error in the jury charge, that the trial court erred in failing to grant a new trial, and that her trial counsel was ineffective. We overrule each of her issues, and we affirm the judgment.

1

## Background

### Testimony of A.V.:

On September 4, 2011, A.V. and Kakembo, his grandmother, got into an argument over A.V.'s eating too much food. A.V. lived with his grandmother, and he testified that Kakembo was drinking and that she "was drunk, very drunk." A.V. stated that during their argument Kakembo hit him multiple times on his arm with a hammer, and then she kicked him out of the house. A.V. went to the home of his neighbor, Robert Sharrod, immediately following the incident. At some point, EMS was called, and A.V. was taken to the hospital. Photographs taken at the hospital reveal a few small cuts on one of A.V.'s hands and what witnesses described as a knot on one of A.V.'s arms.

### Testimony of Sharrod:

After A.V. told Sharrod that he and his grandmother had an argument and that she hit him on the arm with a hammer, Sharrod went to Kakembo's residence to speak to Kakembo. Sharrod testified that it looked as if there had been a struggle inside Kakembo's home. In the statement that Sharrod gave to the police, he explained that "[Kakembo] answered the door . . . with a hammer and wanted to hit me with it but she put it down and sat down and I tried to talk about what was going on with [A.V.]"

2

At trial, Sharrod appeared to distance himself from the comments in the statement he gave to the police. He testified, "I can't remember half the things that went on" and indicated that "[Kakembo] wasn't threatening to me." Sharrod further stated he was "full of drink" on that day, and that when he wrote the statement, he was drunk. Sharrod then testified that he could not remember where the hammer was located, but he agreed a hammer was involved. He further testified that he had no car, and he rode to court with Kakembo for the trial.

Testimony of Officer Epperly:

Officer Epperly testified that she received a call about the alleged assault and went to talk to A.V. who was at an apartment where he had gone after the argument. Epperly testified she found A.V. holding his forearm, and she observed that he had a medium-to-large-size knot on his arm. A.V. told Epperly that his grandmother had been drinking all day, and that she hit him on the forearm with a hammer, threatened to kill him if he got into any trouble, and pulled a knife on him. The officer went to the grandmother's location. When Epperly got out of the car and motioned for Kakembo, she could hear Kakembo was "uttering statements" that the officer "couldn't understand." "[Kakembo] was flaying her arms about violently[,]" and "she appeared to be out of her head and intoxicated[.]" Epperly smelled alcohol on Kakembo.

3

Epperly further testified she interviewed a witness (Sharrod) who stated he saw Kakembo with a hammer in her hand shortly after the incident. When Epperly spoke to Sharrod, he told her that Kakembo was drinking Thunderbird. Epperly testified that at the time of the arrest Kakembo was intoxicated, belligerent, and uncooperative, and she was resisting arrest.

<u>Testimony of Kakembo</u>:

Kakembo denied the allegations. She told the jury she had no prior convictions, and she had no arrests other than this one. She stated that she "raised" A.V. from his birth, and she is the sole caretaker for A.V.'s four siblings. She explained that the children were all born with drugs in their system. According to Kakembo, she has used "Ben Taub Hospital children's ward" and other community services, because A.V. has a "lot of disabilities." Kakembo further testified that A.V. is bipolar and autistic, and he has an anger problem and needs speech therapy. She explained that police officers came to her address on previous occasions when she called them to help her because A.V. would "break[] things." Kakembo testified A.V. takes ten kinds of medication, and she admitted she has had fist fights with A.V. in the past, but she denied hitting A.V. on the day in question.

Kakembo told the jury that the incident did not occur like A.V. stated. According to Kakembo, A.V. was warming up his food when they began to argue about how much food he was warming up in the microwave. She testified that she told him that was "too many," and he ignored her and put in more. Kakembo stated that she then "unhooked" the microwave, and that is when A.V. "came and pushed [her]. [She] fell down. So he pulled -- picked the microwave, that's why -- the bruises came from. He hit me here." Kakembo testified A.V. hit her with the microwave and said "die, die, die[,]" and then he ran outside. She acknowledged that Sharrod came over after A.V. left. Kakembo testified that the reason Sharrod did not see any microwave on the floor when he arrived at the apartment was because she was cleaning the house and she had put the microwave back in its place. Kakembo indicated she assumed A.V. hit his arm when he handled the microwave.

Disputing the officer's testimony, Kakembo maintained that she was not drunk because it was a Sunday. She expressly denied that she hit A.V. with a hammer, and she denied that she ever had a hammer in her hand when she opened the door to talk with Sharrod, and she denied telling Sharrod that "I'll hit you too." Although she acknowledged keeping a hammer in the house, she claimed there was no hammer on the counter when Sharrod came over that day. Kakembo admitted

5

she drinks Thunderbird "[a]s many as times as I can get it[,]" because she is stressed by the responsibility of taking care of the children.

### Assault

Kakembo was charged with assault under Texas Penal Code Ann. § 22.01(a)(1). A person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2013). The offense is a Class A misdemeanor, unless it is elevated to a higher punishment range by virtue of another applicable provision.[1] The charge was not elevated in this case, and therefore the range of punishment was limited to a Class A misdemeanor.

### Legal Sufficiency of the Evidence and Self Defense

In her first issue, Kakembo argues that the evidence is "legally insufficient to disprove [her] plea of self-defense." When determining the legal sufficiency of the evidence, we must (1) consider the entire record in the light most favorable to

---

[1]The offense is elevated to a third-degree felony if it is committed against a person whose relationship with the defendant is described in sections 71.002(b) (dating), 71.003 (family), or 71.005 (household) of the Texas Family Code, and the defendant has been previously convicted of, among other offenses, an assault involving family violence. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A) (West Supp. 2013); Tex. Fam. Code Ann. §§ 71.0021(b), 71.003, 71.005 (West 2014). Although A.V. was a family member or resided in her household, there was no evidence in the record that Kakembo had any prior conviction involving family violence.

6

the verdict and (2) determine whether, based on the record, any rational trier of fact could have found the defendant guilty of all the essential elements of the offense beyond a reasonable doubt. *Ramos v. State*, 407 S.W.3d 265, 268 (Tex. Crim. App. 2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In reviewing the legal sufficiency of the evidence to support the fact finder's rejection of a defensive issue, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *Henson v. State*, 388 S.W.3d 762, 773 (Tex. App.—Houston [1st Dist.] 2012), *aff'd on other grounds*, 407 S.W.3d 764 (Tex. Crim. App. 2013).

After reviewing the record, we conclude that the evidence was sufficient for a rational trier of fact to have found the essential elements of the offense of assault on A.V. and to have found against Kakembo on the self-defense issue. The jury was presented with evidence that Kakembo struck A.V. with a hammer, that A.V. sustained an injury to his arm, that Kakembo came to the door with a hammer after the incident and threatened Sharrod, that Kakembo exhibited belligerent behavior

that day, that Kakembo was intoxicated, that there were prior disturbance calls to the residence regarding problems between A.V. and Kakembo, that A.V. had behavioral problems, and that Kakembo denied hitting A.V.

The jury is the sole judge of the weight and credibility of the evidence, and it resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from that evidence. *See Jackson*, 443 U.S. at 318-19; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury could have believed the testimony from A.V., the testimony from the officer, and the written statement made by Sharrod, and could have rejected Kakembo's account of the events and that portion of Sharrod's testimony at trial that was inconsistent with his prior written statement.

Moreover, to raise the issue of self-defense, "the defendant's defensive evidence" must essentially admit to having committed the offense. *See Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007); *Ex parte Nailor*, 149 S.W.3d 125, 134 (Tex. Crim. App. 2004); *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999); *see also, e.g., East v. State*, 76 S.W.3d 736, 738 (Tex. App.—Waco 2002, no pet.); *Wallace v. State*, 75 S.W.3d 576, 586-87 (Tex. App.—Texarkana 2002), *aff'd on other grounds*, 106 S.W.3d 103 (Tex. Crim. App. 2003); *Gilmore v. State*, 44 S.W.3d 92, 97 (Tex. App.—Beaumont 2001, pet. ref'd);

8

*Anderson v. State*, 11 S.W.3d 369, 372 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Kakembo denied she struck A.V. with a hammer; she never admitted that she struck him at all during the altercation. Rather, Kakembo offered an alternative reason for his injuries -- he injured himself when he picked up the microwave and threw it at her.

Considering all the evidence before us and viewing that evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that Kakembo committed the offense, and could have found against her on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914. We overrule issue one.

<u>Jury Charge</u>

In her second issue, Kakembo claims the trial court erred in failing to instruct the jury regarding three defenses found in sections 9.31 (self-defense), 9.41 (protection of one's own property), and 9.61 (parent-child defense) of the Texas Penal Code. *See* Tex. Penal Code Ann. §§ 9.31, 9.41, 9.61 (West 2011). Kakembo made no objection to the jury charge at the trial court level. Consequently, we will reverse the conviction only if the error, if any, was so egregious and created such harm that the defendant did not have a fair and impartial trial. *Woodard v. State*, 322 S.W.3d 648, 658-59 (Tex. Crim. App. 2010)

9

(citing *Almanza v. State*, 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1984) (op. on reh'g)).

Sections 9.31, 9.41, and 9.61 presuppose the defendant's use of force. *See* Tex. Penal Code Ann. §§ 9.31, 9.41, 9.61; *see, e.g., Mays v. State*, 318 S.W.3d 368, 385 n.55 (Tex. Crim. App. 2010); *Shaw*, 243 S.W.3d at 559; *Ex parte Nailor*, 149 S.W.3d at 134; *Quattrocchi v. State*, 173 S.W.3d 120, 122 (Tex. App.—Fort Worth 2005, pet. ref'd). Because Kakembo never admitted that she assaulted A.V., Kakembo would not have been entitled on this record to the respective statutory instructions. We overrule issue two.

<u>Motion for New Trial</u>

In issue three, Kakembo argues that the trial court erred in failing to grant a new trial in the interest of justice. She again references the trial court's failure to instruct the jury on the parent-child defense (section 9.61 of the Penal Code), which we have disposed of in issue two. No motion for new trial is contained in the record. A motion for new trial "is a prerequisite for the trial court to grant a new trial; the court may not do so on its own motion." *State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013). The trial court did not err in failing to grant a motion for new trial when none was filed. *See id.*; *see also* Tex. R. App. P. 33.1(a). We overrule issue three.

<u>Ineffective Assistance of Counsel</u>

Kakembo also argues that her trial attorney provided ineffective assistance of counsel, because he failed to object to the admission of the testimony of Sharrod and Epperly and because he failed to object to the alleged incompetency of A.V. to testify. Defense counsel did not complain at trial or in a motion for new trial regarding these issues. Kakembo raises the ineffective assistance claim for the first time on appeal.

To prevail on a claim of ineffective assistance of counsel, an appellant must prove two elements by a preponderance of the evidence: (1) trial counsel's performance was deficient; (2) harm resulted from that deficiency sufficient to undermine confidence in the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Ex parte LaHood*, 401 S.W.3d 45, 49-50 (Tex. Crim. App. 2013). An ineffective assistance of counsel claim "must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999)). Ordinarily, the record on direct appeal is simply undeveloped and does not adequately reflect trial counsel's failings, especially when counsel's reasons for failing to do something do not appear in the record. *Id.* at 592-93.

11

Kakembo claims her trial counsel should have objected to the testimony of Sharrod and Epperly because their testimony merely served to bolster A.V.'s testimony. *See generally State v. Balderas*, 915 S.W.2d 913, 919 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (bolstering unimpeached testimony); *see also Arzaga v. State*, 86 S.W.3d 767, 776 (Tex. App.—El Paso 2002, no pet.) (bolstering to convince fact finder that testimony is worthy of credit). We disagree. The evidence from Epperly and Sharrod did not merely serve to bolster A.V.'s testimony. Rather, we conclude the testimony substantively contributed to the prosecution of the case to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would otherwise have been without the evidence. *Arzaga*, 86 S.W.3d at 776. Sharrod and Epperly were both at the scene shortly after the incident and were able to testify to the visible injury to A.V. and to Kakembo's post-incident mental state and conduct. Accordingly, trial counsel was not ineffective for failing to assert a bolstering objection to Epperly's testimony or to Sharrod's testimony.

As to the claim that trial counsel was ineffective because he failed to object to the incompetency of A.V. to testify, there is, as a general rule, a presumption that every witness is competent to testify. *See Davis v. State*, 268 S.W.3d 683, 699 (Tex. App.—Fort Worth 2008, pet. ref'd); *see also* Tex. R. Evid. 601(a). A witness

is competent to testify if (1) he can intelligently observe events at the time of their occurrence, (2) he has the capacity to recollect those events, and (3) he has the capacity to narrate those events to the jury. *See Robinson v. State*, 368 S.W.3d 588, 604 (Tex. App.—Austin 2012, pet. ref'd); *see also* Tex. R. Evid. 601(a). Rule 601(a)(2) places the power to determine the competency of a child with the trial court. *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995); *Rodriguez v. State*, 345 S.W.3d 504, 507 (Tex. App.—Waco 2011, pet. ref'd). A child is considered competent under Rule 601 unless it appears to the court that the child does not possess sufficient intellect to relate the transaction about which he will testify. *Rodriguez*, 345 S.W.3d at 507. As explained by the Court of Criminal Appeals, the "capacity to narrate" encompasses both "an ability to understand the questions asked and to frame intelligent answers[,]" as well as a "moral responsibility to tell the truth." *Watson v. State*, 596 S.W.2d 867, 870 (Tex. Crim. App. 1980). Inconsistent and confusing responses from a child do not necessarily mean the child is incompetent to testify; rather, such matters speak to the credibility of his testimony. *In re A.W.*, 147 S.W.3d 632, 635 (Tex. App.—San Antonio 2004, no pet.).

According to the record, A.V. answered the questions posed to him and offered explanations when necessary. He indicated he knew the difference between

the truth and a lie. A.V. testified about what happened, and he demonstrated the capacity to recollect the events, and his responses indicate he had the capacity to narrate those events to the jury. *See* Tex. R. Evid. 601. Nothing on the face of the record causes us to conclude trial counsel was ineffective in failing to challenge A.V.'s competency to testify. On this record, Kakembo has not demonstrated trial counsel rendered ineffective assistance of counsel. We overrule issue four.

Having overruled all of the issues raised by Kakembo, we affirm the judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on March 12, 2014
Opinion Delivered April 23, 2014
Do Not Publish

Before Kreger, Horton and Johnson, JJ.